All right, our next case for argument is 22-1620 Acceleron v. Dell. Mr. Payne, please proceed. May it please the Court. I would like to address the Ketras 9000 issue first, and this Court should reverse the trial court's denial of Acceleron's motion to exclude the admission of the built-for-trial Ketras 9000 that was materially different than the beta Ketras 9000 that was purported to be prior art. The Ketras 9000 that was purported as prior art in the year 2000 did not pull, and the documents confirm that. The trial court admitted or in the blue brief on page 12 that there were certain functionalities, and this was in regard to the estoppel motion and denying Acceleron's motion to estop Dell from relying upon the physical system after we had gone through the IPR. The trial court acknowledged that the physical system built-for-trial or built after the fact had certain features and functionalities not in the documents. Now, this followed the argument from Dell that the physical system was a superior reference to the documents, and when we look at the documents, indeed they say that it does not pull. The Ketras 9000 from the alleged time as prior art did not pull, but used a different system for data collection, namely interrupts. Now, we'll talk perhaps about... Can we talk about whether you forfeited the right to object to the admission of the physical version into evidence? We certainly... My understanding is you did make this objection, very specific objection to this physical version to the magistrate judge, and then the magistrate judge disagreed with you, and then, of course, you raised your objections to the magistrate to the district court, but you didn't include this particular objection, this particular argument, and so why isn't it true that under our case law, if you haven't re-raised that objection to the district court, you've essentially forfeited it? Right. The argument was not the focus in the objection. I acknowledge that. It is cited back to the brief, and it's made both in the, as you know, Judge Chin, in the initial brief and in the reply. However, it is intertwined with the hardware argument that was made in the objection to the special master. Let's assume for the moment that in your objection that you raised to the district court, and I'm the district court judge, and I would read that, what you were unhappy with, with what the magistrate or special master did, and I don't see anything about this whole objection about software. So, I don't rule on that because it wasn't raised to me. Why isn't it then just gone? Well, the trial court actually acknowledged that any issue that Acceleron desires to raise could be raised at trial. The trial court in this decision did not say... Yes, but that any issue that was raised didn't include the software argument. Well, it did, Your Honor, because even in the objection... Maybe in the most elliptical way, but I guess what I'm trying to say is when I looked at what your motion said, I didn't see anything. I mean, if I was the district court judge, I wouldn't even understand that there was some kind of contest about the beta version versus the software and the physical version. I think the statement that I'm referring to where the trial court overruled the objection from Acceleron from the special master is when the trial court does reference any objection, keeping in mind that this was the third time this issue had come before the court. It had been briefed and litigated to death, and in fact, the special master in denying the issue in the motion in limine referenced both the prior motion to strike ruling from the court and the district court's denial of summary judgment. So I think that... Three or two. I mean, it was the motion for partial summary judgment that you brought. That's right. And then this whole question about anticipation because of this whole problem was up and the ball of wax, and the trial judge and the special master say, well, that's a fact issue. Let the jury decide. Right. That's what the court says? Right straight through. So it's a jury issue. Let the jury decide. Well... And so my point is you're challenging here the ruling on the motion in limine. That's correct. You're not, you don't have a sufficient of the evidence on J Moll on the jury verdict that was of invalidity. So the standard of review on the issue in front of us is abuse of discretion. Right? It is, Your Honor. And that's not a standard review that's very friendly to you. If you had been challenging the jury verdict, you'd have a more friendly standard of review because the patent would have been invalidated. Is there substantial evidence to show clear and convincing evidence of invalidity? And that whole analysis is in front of us. And so from my perspective, whether or not you waive the software argument or not, you're stuck with the rationale from the denial of the motion, which was, here's a fact issue. And the evidence that's being offered isn't being, you're not trying to say it doesn't qualify under Daubert. The evidence, and the judge says, well, the jury can decide one way or the other. And what grounds do I have to reverse that judgment, which was the J Moll, the emotional enmity is denied because it's a fact question. Let the jury decide. Because Your Honor, we are saying that the admission of the Ketcher's 9000 built for trial was unduly and unfairly prejudicial to Acceleron as a result. Any piece of evidence that is subject to doubt has that capacity. And in this case, it was unfairly prejudicial. And I do believe it was. More so than any other piece of evidence that may or may not turn the verdict against your client. Because this device was materially different. It was not the same. It was, it had different software that did different things. And that was the issue. But that's the fact question. And you had evidence in front of the jury. You've given a full opportunity to put in your evidence saying, look, this isn't the same machine. It's run differently. The other side put in its testimony as to why its two people and its expert thought it was the same. And the jury made a decision. And you're not challenging the jury verdict. We are to the extent that it is tainted. No, you're not. You didn't. You can't say that. Because there's a way to challenge the jury verdict, which is in J. Moll. And you didn't file that. You chose instead to attack the admission of the evidence as a matter of emotional enmity up front. The trial judge is trying to decide what evidence is going to come in, right? The judge has already seen it once in terms of your partial motion for similar judgment. Right? Right. Help me out. Sure. How can I, how can I say, I mean, it's a strange world when you can take a piece of evidence that didn't exist and create it out of whole cloth, you know what I mean? And then say, so our case law allows you to do that. And we're saying this is the prejudicial effect. It was substantially prejudicial for that piece to come in and to be relied upon to show something that does not exist, allegedly exists. You're actually saying that on the motion for partial summary judgment of non-invalidity, no reasonable juror could have found these claims invalid. That's what your summary judgment motion was trying to establish. That is what we tried to establish in the court. But you're not appealing that. Well, the rationale for that was pulled in by the special master in regard to the Meyer Bodum saying that one was just like the other, and in fact, it's not. In the Meyer case, it was the plunger. I don't want to take up too much of your time because, I mean, this issue is very important because if you lose on this issue, if the catcher goes in, claim 20 is invalid and you're not challenging that, that moots the inclusion argument. It does. It does. To recap, I'd like to hit this. To follow up just on that for one second, just to make sure I understand procedurally, if you don't end up prevailing on the catcher's 9,000 argument, either the forfeiture point or on the merits directly, that moots the infringement issue. Is that right? You don't have a separate argument apart from this on infringement, do you? I think that's right, Your Honor, because the infringement issue comes from the construction of the term polls, and I don't know that the court would get there if it's not going to deal with it. Well, if your claim is invalid, I mean, you're not making a separate argument that a verdict that you didn't infringe somehow makes you a nicer citizen or whatever, right? We are not. We are focusing on the catcher's issue first, and then the polling issue, if the court changes the claim construction of polling. Could you speak to the absence of a 50B motion on this question? On the question of? Of this invalidity argument. I think that it was a rightness issue, or whether the issue had been preserved. And I'm not actually sure, as I think back to that, what may have gone into why the challenge that we had before us was and wasn't selected. But with regard to why the catcher's and the limoney issue is presented to the court is because it's different. And as far as your point about should this be the determination of the jury, the court decided that it was substantially the same based on what the court heard. But the court, as we put in the brief, relied on documents that show exactly the opposite. And so it never should have gone before the jury. And without it, Dell has nothing to say about would a claim 20 still be invalid. Without that device at trial, it can't. I don't think anybody's arguing that the invalidity determination turns on that piece of evidence. Right. Well, I just wanted to be clear about that. No, I know that. But if the claim is invalid, then there can't possibly be any infringement. If I'd like to turn to willfulness in a few moments, I have. I just want to make sure I understand. On the invalidity question, and this is the only issue we really have to decide, is this motion in limoney objection. First, whether it was forfeited. If not forfeited, then was it properly admitted under the abuse of discretion standard? Because if we conclude that we're not going to overturn its admission, then this whole 50-B motion challenging the invalidity verdict? I think that may be correct. As I stand here now, Your Honor. Willfulness is with regard to claim 3, right? Not claim 20. So why don't you get to willfulness? Because that is still an issue regardless of what happens to claim 20. With regard to willfulness, the trial court erred in prohibiting the accelerant from presenting its willfulness case to the jury, such that the court should reverse and remand. Now, with regard to claim 20, it was never tried on infringement. So if the court does decide that the catcher's issue goes accelerant's way, claim 20 has never been tried, and the willfulness issue would be tried there. But with regard to claim 3, as the Chief Judge notes... You prevailed on one claim, and your argument should have been willful infringement. And the judge went through your argument and said, well, if I'm just measuring it as a matter of whether there's willful infringement, I look at the factors, I look at all these factors, and I say, no, there's no willful infringement. Plus, he says, I've already decided I'm not going to enhance, so I'm not going to enhance. You know, that takes care of it secondarily. What's interesting, Your Honor, and I would point the court to what the trial court said about inducement infringement. The trial court said that there is subjective intent to find inducement infringement, citing only two of the many factors that accelerant put forward for willfulness. So it was good enough there, and that's very similar to what this court did in SRI, where it said an unchallenged finding of inducement infringement. While the standards are different, it was enough there to support a finding of willfulness. And we would submit here that... But SRI also said a finding of induced infringement doesn't necessarily compel a finding of willful infringement. And I'm not suggesting that it does. So there is some daylight, you know, a non-articulated daylight between inducement and willfulness. And so, therefore, we can't say that the district court's decision on all these different issues is hopelessly in conflict with itself if it ruled one way on inducement and a different way on willfulness. I'm only drawing the comparison to SRI because there was an unchallenged finding of inducement infringement there. And I believe the court indicated that a reasonable jury could likewise find willfulness. Here, I think, is the same. I guess what I'm trying to say is if you're going to convince us that the district court was wrong in saying, you know, no reasonable fact finder could find willful infringement here, you would need something stronger than just pointing out that he did allow induced infringement to go to the jury. And on allowing the inducement, it was on two facts. We've cited many others, including the fact that the products weren't changed for a period of time. There were more products that came out based upon that technology. One of Dell's experts indicated that the accused device could very well meet one of the claim elements. There was no advice of counsel, and this case falls before 298, where that could at least be a factor. So these would be facts that a reasonable jury could point to and could, considering the light most favorable to acceleron, could find willfulness. And to the point of inducement, it's only to the fact that only two of the factors were relied upon to find inducement. But just in terms of what was your killer evidence of deliberate infringement here, it seemed like it was more around the edges. I mean, you gave some letters, but you didn't actually accuse them of infringement. Eventually, obviously, after the lawsuit was filed, they became aware of the patent, but that awareness of the patent is not alone enough to even credibly make it a jury question of whether they are deliberately and intentionally infringing that patent. You know, it is a totality of the circumstances, but to the point of what evidence the court might focus upon, the trial court focused on the fact that 11 of Dell's competitors were sued for products that were very similar. And at trial, it came out that Dell admitted its technical expert. One of its employees acknowledged that his products were very similar to, I think, Hewlett-Packard and IBM. So Dell knew that those products were accused of infringing. So that was enough for the trial court to say that that's objective intent for inducement. We think a reasonable jury could likewise rely on evidence like that and the other facts to likewise find fault. Thank you. Well, you've used all your time. I'll restore some rebuttal time. Thank you very much. To your proposing counsel. Mr. Fleming? Good morning, and may it please the Court. Mark Fleming together with David Yin and William Conlin on behalf of Dell. I'll start with Ketras as well because, as the questions have indicated and as Mr. Crain has conceded, the Ketras issue is not only dispositive of the invalidity issue, but also of claim construction and infringement. And the Ketras issue, the objection that's being raised before this Court, is twice forfeited and twice harmless. The first forfeiture problem is that Acceleron did not raise the difference between the software versions that it's now arguing in its objections from the Special Master to the District Court. The secondary forfeiture problem is that the specific arguments that they make in their briefing, you didn't hear as much of it this morning, but with regard to sentences in the Ketras software manual, our expert Dr. Michelson's trial testimony about Ketras and its documentation, none of that was presented even to the Special Master. If you look at the briefing to the Special Master, 5739, 5740, none of that is there. Acceleron's response to that in their reply is, oh, well, our motion in limine was preserved. That's true, but that is all that was preserved. If they're going to rely on arguments that are now not presented to the Special Master, not in their motion in limine, then they either needed to preserve them through a trial objection or at the very least through their post-judgment motion for new trial wasn't done, it's forfeited twice over. Also harmless because they do not deny that as the case now stands before this court, the Ketras unit that was demonstrated at trial was relevant to invalidity of Claim 3 and Claim 24. We actually succeeded in invalidating Claim 24. They haven't appealed that. They haven't denied that the physical unit was relevant to show invalidity of Claim 3. They're only focusing on Claim 20. That at most would have justified a limiting instruction of some kind where the judge could have said you can only consider this demonstration for purposes of those two claims. I conclude it's not relevant to Claim 20. They didn't ask for that limiting instruction from Judge Batten. They haven't asked for it here. So that's another reason why the court does not need to engage with the merits of whether it was admissible. The second harmlessness reason is there was plenty of other evidence of Claim 20's invalidity. Judge Clevenger, you adverted to this in some of your questions. Dr. Michelson, our expert, gave detailed testimony that the Ketras prior art product, not the thing that was sitting in the courtroom, but the prior art product, which was the invalidating reference, actually engaged in polling. And his testimony has not been challenged. There's no appeal of a Daubert motion or anything like that. And he could give that testimony even if it relied on inadmissible evidence. And he gave detailed testimony about how the prior art product actually worked. He was cross-examined on that. The jury was entitled to make its credibility determination. Mr. Forbes himself also testified about how he demonstrated the Ketras manager software to customers in the spring and summer of 2000. And he said it works exactly the same way as Dr. Michelson had testified. So even had there been no live demonstration of a Ketras unit in the courtroom at all, there is plenty of evidence that the prior art product anticipated Claim 20. And as your honors have indicated, there was no post-judgment Rule 50b motion, not just on this issue, on any issue. Acceleron did not file a post-judgment Rule 50b motion on any issue. So there is no sufficiency question before the court. With respect to willfulness, I may sound like a broken record, but that's moot too, or at the very least harmless, because the district court has already exercised its substantial discretion in denying enhanced damages. And Acceleron has not shown that any retrial, even if the jury, a new jury, were to find willfulness could change the ultimate judgment. This case, we think, is like Exergen. It's a non-precedential case, but I think it's very persuasive on this. There, the district court granted summary judgment of no willfulness, then separately evaluated the read factors and said, I'm not going to enhance damages. This court affirmed and rejected the argument that a jury must consider willfulness before exercising discretion. And with regard to inducement, I just point out that SRI, of course, makes clear that inducement and willfulness are different standards. Also, a reasonable belief of invalidity is relevant to willfulness, whereas under Connell v. Sisko, we know it's not relevant to inducement. And clearly, Dell had a reasonable belief of invalidity in this case. It prevailed as to Claim 24 and Claim 20, and was at the very least a triable issue for the jury on Claim 3. So we think a remand on willfulness would be futile and unnecessary. And unless the Court has further questions, we'd respectfully submit the judgment should be affirmed. Thank you, Your Honor. Questions? All right. Thank you. Mr. Fleming? Mr. Fray? A couple of points I'd like to make. With regard to Claims 3 and Claim 20, the Claim 20 was invalidated, but Claim 3 wasn't. And there's a distinction there I think that's relevant here. Claim 3 had only devices or structure that the jury could see. And when they looked at it and they looked at the catcher's device, and he's right, we do not object to Claim 3 because when the jury was able to see it, it did not have the structure that Claim 3 required. But they couldn't see what's going on in Claim 20 because it claimed software that's happening at the microprocessor. And they couldn't see that. And that's where the undue prejudice and the unfair prejudice really takes root. And I think the distinction is most bright because there was nothing that we could do at that point to, you know, what is it, Acceleron's in a position of putting the negative. But then the argument which he made, Mr. Fleming made, was that at that point since it was admissible with regard to Claim 3 and that you didn't object, is that even if you objected to its admissibility with regard to Claim 20, that would have just been a limiting instruction. The device itself would still have been an evidence. The trial court had already told us what our options were with that. With regard to the limiting instruction, our option was to go through cross-examination. We felt that it would be futile to bring it up again. We had already brought it up three times already. To bring it up again, we didn't… Before the special master. Sorry? Before the special master you brought it up? We had already… Well, the Ketras issue had come before the court in three different times. In the motion to strike, the motion for summary judgment, now motion in limine. And the result of that… When was the motion to strike? I didn't see any reference to that in the briefs. Well, we… The prior motion to strike was the first time. It was for estoppel purposes. That was the first time that Acceleron had challenged the Ketras 9000. Okay. Right. And my point there to… In the specific argument when everybody was arguing back and forth as to why the Ketras was insufficient was basically on the summary judgment and on the motion in limine? The special master cited both of those, your honor. He cited back to the… I knew that. Right, right. That's what I'm referring to there. And that's why, to the chief judge's point, why a limiting instruction wasn't requested. The trial court had already said that, you know, the cross-examination was the available remedy at that time. With regard to my friend bringing up the expert, Dr. Michelson, and the other witnesses, none of them speak to what was going on in the prior device as far as whether it was polling. Dr. Michelson only relies upon the two witnesses that neither one were together. Both were cited that are interested witnesses saying that it looked and functioned the same. They never say that it polled because they didn't write the software. It was farmed out to a third party and they were working on other parts. So, let's parse out what they actually said. Dr. Michelson's opinion was only about… All right, counsel, you are way beyond your time. So, if you have a summing thought, we'd be happy to hear it. It's just that we disagree that this issue has been forfeited and would be harmless. We do acknowledge that the Catcher's 9000 affects the claim construction issue. With regard to the willfulness issue, we think that should have gone to the jury and we would ask the court to reverse on that as well. Thank you. I thank both counsel. This case is taken under submission.